FILED

04/24/2017

Clerk of the
Appellate Courts



IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 21, 2017 Session

## TRINA A. HENSON v. CHRIS ROBERT HENSON

**Appeal from the Circuit Court for Robertson County**
**No. 74CC1-2015-CV-58    Ross H. Hicks, Judge**

_____

**No. M2016-01661-COA-R3-CV**

_____

This is an appeal from a final decree of divorce. The trial court declared the parties divorced, divided the marital property and marital debt, and ordered Husband to pay rehabilitative alimony of $2,500.00 per month for three years, and an award of $20,000.00 for attorney's fees, as alimony *in solido*. On appeal, Husband contends that the trial court erred in: (1) its division of the marital debt; (2) its award of rehabilitative alimony; and (3) its award of attorney's fees. Wife requests attorney's fees incurred in defending this appeal. We affirm the trial court's judgment and remand for determination of Wife's attorney's fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Jonathan A. Garner, Springfield, Tennessee, for the appellant, Chris Robert Henson.

Charlotte Ann Fleming, Emily Cannon Green, and Brandi Lynn McPeek Jones, Springfield, Tennessee, for the appellee, Trina A. Henson.

## OPINION

### I.  Background

Appellant Chris Robert Henson ("Husband") and Appellee Trina A. Henson ("Wife") were married in June of 2006. No children were born to the marriage. Husband and Wife moved frequently during their relationship. In February 2006, Wife moved to

Germany to join Husband, who was stationed there with the Army. In June 2006, the couple moved to Alabama; in 2009, the couple relocated to Tennessee. In November 2012, Husband and Wife moved to Dubai, United Arab Emirates, for Husband's employment as a helicopter pilot. The couple maintained a marital residence in Tennessee, and Wife returned to Tennessee to live in May 2014. In November 2014, Husband began a relationship with a woman in Dubai. Wife discovered Husband's affair in January 2015, while he was visiting the marital residence, and the couple separated after a confrontation.

Husband has a college degree, and Wife has a high school diploma. During the parties' nine-year marriage, Husband retired from the military in 2012 then obtained employment with private security companies as a helicopter pilot. Prior to the marriage, Wife was employed as a medical referral coordinator in Florida. She testified that she quit her job and moved to Europe after her engagement to Husband. In 2009, Wife obtained a medical transcription certificate and worked as a medical transcriptionist for one month, after which Husband requested that she quit to assist him in a decorative concrete business. Sometime in 2008 or 2009, Wife's medical transcription certification expired. Husband subsequently sold the concrete business and purchased a gas station. Wife assisted in selling the gas station six months later. At the time of trial, Husband worked as a Black Hawk helicopter instructor pilot for Global Aerospace Logistics ("GAL") in Dubai, making $16,409.17 per month. Husband also testified that he has additional monthly income of: (1) $2,406.00 in military retirement, (2) $917.13 in disability,[1] and (3) $1,800.00 in rental income, for a total of $21,631.88 per month. Wife was not employed at the time of trial, but she testified that she cleaned houses with her sister for several months, making approximately $500.00 per month, until she suffered a knee injury in September 2015. Wife stated that she had applied for several jobs but had not received any offers.

On January 29, 2015, Wife filed a complaint for divorce against Husband in the Circuit Court for Robertson County ("trial court"). As grounds, Wife alleged inappropriate marital conduct and irreconcilable differences, which made cohabitation unsafe and improper. On February 19, 2015, Mr. Henson filed an answer and counter-complaint for divorce. In his answer, Mr. Henson admitted the parties' irreconcilable differences but denied that cohabitation was "unsafe"; Mr. Henson also denied inappropriate marital conduct on his part. In his counter-complaint for divorce, Husband alleged that Wife had committed inappropriate marital conduct so as to render cohabitation improper. On March 3, 2015, Wife filed an answer to the counter-complaint, denying any inappropriate marital conduct on her part.

On March 24, 2015, Wife filed a motion for *pendente lite* support, arguing that, in the course of the parties' marriage, Husband paid for Wife's living expenses, but after

---

[1] The nature of Husband's disability is not explained in the record.

filing for divorce, Husband ceased support except for mortgage payments and homeowner's insurance. Wife stated that, since December 2014, she had incurred $7,500.00 in credit card debt for household and living expenses, and Husband's monthly income was $14,500.00. On May 6, 2015, Husband filed a response to Wife's motion, alleging that he had been unemployed since December 2014 and was seeking work as an independent contractor. On May 28, 2015, the trial court ordered *pendente lite* support in the amount of $3,000.00 per month, beginning with an immediate payment for the month of May. On June 9, 2015, Wife filed a motion for contempt, stating that Husband had failed to pay the court-ordered support. On August 5, 2015, the trial court heard the motion for contempt and found that Husband had not made the May payment to Wife and that subsequent payments were late. Based on Husband's income from his work for GAL, the trial court also found that Husband's "statements that he cannot afford to pay the Wife the sum of $3,000.00 per month [are] simply not true"; therefore, the trial court found Husband in willful contempt. The trial court ordered Husband to pay the May support immediately and to continue making monthly payments. The trial court also awarded Wife attorney's fees of $1,125.00 for the contempt motion.

On December 29, 2015, Wife filed a second motion for contempt, arguing that Husband removed Wife as the beneficiary of his life insurance and stopped payment for Wife's life insurance policy in violation of Tennessee Code Annotated Section 36-4-106(d)(2). On February 2, 2016, the trial court heard Wife's motion for contempt; on the same day, the trial court held the divorce hearing. On February 4, 2016, the trial court dismissed Wife's motion for contempt but ordered Husband to maintain Wife as the sole beneficiary on his life insurance policy. On May 11, 2016, the trial court issued its final decree of divorce, finding that both parties had committed inappropriate marital conduct.

The parties were each awarded half of the value of the marital residence, which was to be sold. The trial court allowed Wife to continue residing in the marital residence until it sold. The trial court awarded Wife the personal property in the marital residence. Each party was awarded the automobile in his or her respective possession; because Husband was also awarded an additional vehicle, the trial court ordered that Husband pay Wife $6,000.00 for the excess equity.

The trial court also ordered Husband to: (1) pay Wife rehabilitative alimony of $2,500.00 each month for three years; (2) pay the mortgage on the marital residence until it sold; and (3) pay Wife's credit card debt of $18,162.04 for household and living expenses incurred during the litigation. The trial court assessed costs against Husband and further found "that the Wife is entitled to an award for attorney's fees of $20,000.00 due to Husband's misrepresentation of his income at the hearing on May 13, 2015, and his superior economic position relative to the Wife."

On May 18, 2016, Husband filed a Tennessee Rule of Civil Procedure 59 motion to alter or amend the judgment. In his motion, Husband argued that the trial court's order

overstated his annual income and that the trial court made a duplicative award because Wife's attorney's fees were charged to her credit cards, and that the majority of the debt was assigned to Husband. On May 24, 2016, Wife filed a response to Husband's motion, alleging that the trial court underestimated Husband's income. Wife also argued that the award of attorney's fees was not duplicative because her attorney's fees totaled $26,482.54, which exceeded the fees assessed to Husband. On July 5, 2016, the trial court found that Husband's income was misstated in the divorce decree and amended its judgment to reflect Husband's monthly income of $16,409.17 from GAL. Additionally, the trial court determined that the credit card award and attorney's fees award were not duplicative and held:

> The Court further finds that Mr. Henson misrepresented his actual income during the case and therefore the award of attorney's fees is equitable and should be paid in essence as a sanction. Therefore, the Motion to Alter or Amend as to the attorney's fees is denied.

Husband appeals.

## II. Issues

Husband raises three issues on appeal, which we restate as follows:

1. Whether the trial court made an equitable division of the marital property and debts?

2. Whether the trial court properly awarded spousal support to Wife?

3. Whether the trial court properly awarded attorney's fees to Wife?

Wife raises one additional issue:

4. Whether Wife should be awarded attorney's fees on appeal?

## III. Standard of Review

Because this case was tried by the trial court, sitting without a jury, we review the trial court's findings of fact *de novo* on the record of the trial court, accompanied by a presumption of the correctness of these findings, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744 (Tenn. 2002). With respect to the trial court's conclusions of law, however, our review is *de novo* with no presumption of correctness. *Kendrick v. Shoemake*, 90 S.W.3d 566, 569 (Tenn. 2002).

- 4 -

## IV. Analysis

### A. Division of Marital Debt

Husband argues that the trial court inequitably divided the marital debt by assessing the majority of the debt to Husband. Husband further argues that Wife should be responsible for: (1) paying the mortgage on the marital residence until it is sold; (2) paying her credit card debt that accrued during the pendency of the divorce proceedings; and (3) paying Husband's credit card debt incurred for purchasing and operating a gas station for six months during the marriage.

In making a property division in a divorce, the trial court must first classify property as marital or separate property then divide the marital property equitably. *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001); Tenn. Code Ann. § 36-4-121(a)(1). A division of marital property in an equitable manner does not require that the property be divided equally. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002). This Court gives great weight to the trial court's division of marital property and is "disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). Marital debts are "subject to equitable division in the same manner as marital property and [the] definition [of marital debts] corresponds with that of marital property provided in Tennessee Code Annotated Section 36-4-121(b)(1)(A)." *Luplow v. Luplow*, 450 S.W.3d 105, 110 (Tenn. Ct. App. 2014) (citing *Larsen-Ball v. Ball*, 301 S.W.3d 228, 233 (Tenn. 2010)). The Tennessee Supreme Court has defined the term "marital debts" as follows: "'marital debts' are all debts incurred by either or both spouses during the course of the marriage up to the date of the final divorce hearing." *Alford v. Alford*, 120 S.W.3d 810, 813 (Tenn. 2003). The trial court is to divide marital debts by considering four factors: (1) the debt's purpose; (2) which party incurred the debt; (3) which party benefited from incurring the debt; and (4) which party is best able to repay the debt. *Alford v. Alford*, 120 S.W.3d 810, 813 (Tenn. 2003) (citing *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989)).

Husband's first argument concerns the mortgage on the marital residence. The trial court found that "Husband will be responsible for payment of the mortgage[] on said propert[y] until sold and… Wife shall be able to maintain residence at [the marital residence] until sold." Husband contends that, because the trial court found that both Husband and Wife had an interest in the marital residence, the trial court erred in ordering him to pay the mortgage on the home until it sells. It is undisputed that both parties incurred the mortgage debt, and both parties will benefit if the house is not foreclosed. Although both parties will benefit, it is clear that Wife is unable to maintain the mortgage payments, pending sale of the marital residence. Husband, however, is able to pay the mortgage. In view of the economic disparity between the parties and the

consequence to both parties if the home goes into foreclosure, we cannot conclude that the evidence preponderates against the trial court's allocation of the mortgage on the marital residence to Husband.

Husband next argues that the trial court erred in ordering him to pay Wife's credit card debt. The trial court found that "Husband will be responsible for $18,126.04 of… Wife's [c]redit [c]ard debt due to the fact that this debt was primarily incurred during the parties' separation and used to pay marital bills and living expenses…. The [c]ourt further finds that… Husband will be responsible for his own credit card debt." Husband argues that Wife should be assessed: (1) $18,162.04 in credit card debt; and (2) Husband's business debt on his credit card totaling $39,148.00. Turning first to Wife's credit card debt, as found by the trial court above, this debt was incurred during the pendency of the litigation due to Husband's revocation of financial support while Wife continued to maintain the marital residence and incur living expenses. During the marriage, Husband provided all funds for the home and living expenses, but after Wife filed for divorce, as found by the trial court, Husband ceased "support aside from paying the mortgage note on the marital residence." Wife testified that her credit card debt was incurred in maintaining the marital residence and other living expenses. Concerning Husband's business debt, Husband contends, "[t]hough not particularly set forth in the [f]inal [d]ecree, the [trial c]ourt's language can be reasonably inferred to suggest that the [t]rial [c]ourt determined this to be a separate debt." Husband relies on the trial court's language that the business debt is "Husband's personal business loan." This language is not sufficient to conclude that the trial court found that Husband's debt was separate debt; rather, it appears that the trial court used this language to differentiate the business debt on one of Husband's credit cards from Husband's second credit card with a balance of $3,148.00. Furthermore, from the record, it is clear that the business debt, acquired during marriage, is a marital debt. *Alford*, 120 S.W.3d at 813. Again, Wife lacks the ability to repay either her credit card debt or Husband's business credit card debt, and Husband has considerable income. Accordingly, the record does not preponderate against the trial court's division of the marital debt.

## B.  Spousal Support

Husband argues that the trial court erred in its award of spousal support. As noted above, the trial court awarded Wife $2,500.00 per month in rehabilitative alimony for a period of three years. Husband contends that the trial court should have denied alimony altogether or at most should have awarded only alimony *in solido* due to the short duration of the marriage. Concerning the award of alimony, the trial court found, in relevant part, that:

> Wife plans to go back to school once she is fully recovered to obtain a degree that will enable her to get a job….

- 6 -

As evidenced by… Wife's Income [and] Expense Statement and due to the additional costs of [future education] and obtaining her own health insurance,… Wife is in need of financial support from… Husband.

\* \* \*

[Rehabilitative alimony] is intended to assist the disadvantaged spouse to achieve a higher earning capacity such that [the] spouse's standard of living after the divorce will be 'reasonably comparable to the standard of living enjoyed during the marriage.'

The Court concludes that Wife is in need of rehabilitative alimony pursuant to Tennessee Code Annotated Section 36-5-121(d)(2).

Trial courts have broad discretion in awarding spousal support. ***Bratton v. Bratton***, 136 S.W.3d 595, 605 (Tenn. 2004). "Appellate courts are generally disinclined to second-guess a trial judge's spousal support decision," absent a trial court's abuse of discretion. ***Kinard v. Kinard***, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998). The role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable. ***Bogan v. Bogan***, 60 S.W.3d 721, 733 (Tenn. 2001) (citing ***Overstreet v. Shoney's, Inc.***, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)).

Pursuant to Tennessee Code Annotated Section 36-5-121(d)(1), "[t]he court may award rehabilitative alimony, alimony *in futuro*, also known as periodic alimony, transitional alimony, or alimony *in solido*." "[A] court may award alimony to an economically disadvantaged spouse. Once the trial court has found a party to be economically disadvantaged relative to his or her spouse, it must determine the nature, amount, length of term, and manner of payment of the award." ***Perry v. Perry***, 114 S.W.3d 465, 467 (Tenn. 2003). The General Assembly has indicated its preference for rehabilitative alimony, if rehabilitation is possible, to allow for the economically disadvantaged spouse "to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties." Tenn. Code Ann. § 36-5-121(d)(2). In determining the type and amount of alimony, the trial court is to consider the following statutory factors, pursuant to Tennessee Code Annotated Section 36-5-121(i):

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

All relevant statutory factors are to be considered by the trial court, but "[t]he need of the recipient spouse and the obligor spouse's ability to pay are the primary considerations in the determination of an award of alimony." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 110 (Tenn. 2011); *see Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001) (holding that "[w]hen deciding whether rehabilitation is possible, and, in general, determining the proper form and amount of alimony, courts must consider the 'relevant factors' set forth in section [36-5-121(i)], but 'the real need of the spouse seeking the support is the single most important factor. In addition to the need of the disadvantaged spouse, the courts

most often consider the ability of the obligor spouse to provide support.'") (quoting *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995)).

From the trial court's findings, *supra*, it appears that the trial court considered the relevant factors in reaching its decision to award Wife rehabilitative alimony. However, Husband argues that because the marriage was of a "relative[ly] short duration," Wife was not absent from the workforce for a sufficient length of time to "impede" her career. However, Husband fails to cite any Tennessee authority that bars an award of rehabilitative alimony in a marriage with a duration of less than ten years. As stated by this Court, "[t]here are no hard and fast rules for spousal support decisions. Each case involves a fact-intensive inquiry and must be decided on its own facts and circumstances." *Ricketts v. Ricketts*, No. M2005-00022-COA-R3-CV, 2006 WL 2842717, at *6 (Tenn. Ct. App. Oct. 3, 2006) (internal citations omitted).

Turning to the record, prior to the marriage, Wife quit her job to live with Husband in Europe, and Wife remained unemployed throughout the marriage, with the exception of one month of employment as a medical transcriptionist. Wife ended this employment when Husband requested that Wife assist him with two businesses, for which she took no salary. Therefore, Wife has been unemployed for over ten years. Husband has a college degree, and he is a trained helicopter pilot. He has maintained employment throughout the course of the parties' marriage. Since filing for divorce, Wife has applied for jobs but has been unable to find long-term employment. Additionally, since filing for divorce, she has undergone two surgeries, and she testified that she will need several months to recover. As found by the trial court, Wife plans to pursue an associate's degree in medical coding to seek future employment.

Considering the factors set out in Tennessee Code Annotated Section 36-5-121(i), Wife's statement of expenses filed in the trial court shows that her monthly expenses total $4,367.00. Wife has no income; Husband earns $16,509.17 per month from his employment with GAL and an additional $5,123.12 from other sources. Accordingly, Wife is economically disadvantaged relative to Husband, and Husband has the ability to pay the rehabilitative alimony award of $2,500.00 per month for three years. From the record, we conclude that the evidence does not preponderate against the trial court's findings on alimony. Husband also argues that rehabilitative alimony will place Wife in a better economic position than she enjoyed before the marriage; therefore, he contends that (assuming the trial court should have awarded any alimony), the trial court should have awarded only alimony *in solido*. Tennessee Code Annotated Section 36-5-121(d)(2) specifies that rehabilitative alimony is intended to allow the economically disadvantaged spouse "to achieve… the standard of living… reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse…." Here, the trial court found that Wife's rehabilitative alimony award "is reflective of what… Wife testified she was earning prior to the marriage." The evidence shows that Husband's monthly income is considerable, and he

enjoys a standard of living consistent with this income. Contrary to Husband's argument, Wife's rehabilitative alimony award of $2,500.00 per month would not provide her with such a high standard of living as to violate the statutory constraint. Therefore, we conclude that the trial court did not err in its award of rehabilitative alimony of $2,500.00 per month for three years to Wife.

### C. Attorney's Fees

We next turn to Husband's argument that the trial court erred in awarding Wife's attorney's fees. The trial court found that "Wife is entitled to an award of attorney's fees of $20,000.00 due to Husband's misrepresentation of his income at the hearing on May 13, 2015, and his superior economic position relative to… Wife."

As explained by the Tennessee Supreme Court,

[i]t is well-settled that an award of attorney's fees in a divorce case constitutes *alimony in solido*. The decision whether to award attorney's fees is within the sound discretion of the trial court. As with any alimony award, in deciding whether to award attorney's fees as alimony *in solido*, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i)…. Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses,… or the spouse would be required to deplete his or her resources in order to pay them. Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony.

*Gonsewski*, 350 S.W.3d at 113. The trial court must consider each relevant statutory factor, but "the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay." *Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007).

Husband contends that the award of attorney's fees is improper because Wife's credit card debt includes charges for her attorney's fees, making the award duplicative with the marital debt division. Wife testified that she was able to afford an attorney for the divorce by using her credit cards, and Wife stated, in her motion to alter or amend, that she charged $2,500.00 in attorney's fees on her credit cards. However, neither Husband nor Wife offered Wife's credit card statements into evidence. Regardless, Wife argues that the attorney's fee award is not duplicative because her attorney's fees total $26,482.54, which exceeds the amount awarded by the trial court; however, Wife's attorney's affidavit reflects fees in the amount of $23,447.06. Husband further argues that the award of attorney's fees is unreasonable due to Wife's "litigious nature." The

trial court found that "Mr. Henson misrepresented his actual income during the case and therefore the award of attorney's fees is equitable and should be paid in essence as a sanction." From our review, it appears that the trial court's finding that Husband misrepresented his income stems from the fact that, at trial, Husband presented his income from GAL, in UAE *dirhams* as opposed to U.S. dollars. Wife, as opposed to Husband, offered proof as to the conversion rate, and the trial court had to do the currency conversion in order to ascertain Husband's income. Husband's pattern of being less than forthright about his income continued before this Court. Husband's appellate brief stated that his monthly income "was determined to be $11,809.54 per month [including] both his housing and costs of living expenses…. The net proceeds following the deduction of his housing and living expense[s] are $6,681.47." At oral argument, Husband's attorney represented to this Court that Husband's income was $16,409.17. However, when specifically asked whether the $16,409.17 amount included all of Husband's income, Husband's attorney answered, "No." Our review of the record shows that Husband also receives monthly payments of military retirement, disability, and rental income, and Husband's actual total income is $21,631.88 per month. The evidence does not preponderate against the trial court's finding that Husband has the ability to pay Wife's attorney's fees. Furthermore, as discussed in detail above, Wife has substantially less income than Husband. It appears, therefore, that Wife is in need of alimony *in solido*. Accordingly, we conclude that the trial court did not err in its award of $20,000.00 in attorney's fees, as alimony *in solido*.

## D. Attorney's Fees on Appeal

Wife asks this Court to award her attorney's fees incurred in this appeal. "When considering a request for attorney's fees on appeal, we… consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the requesting party sought the appeal in good faith, and any other equitable factors relevant in a given case." *Chaffin v. Ellis*, 211 S.W.3d 264, 294 (Tenn. Ct. App. 2006) (quoting *Darvarmanesh v. Gharacholou*, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *16 (Tenn. Ct. App. July 19, 2005)). Our decision whether to award attorney's fees on appeal in a divorce case implicates the Tennessee Code Annotated Section 36-5-121(i) factors used by the trial court to determine whether a spouse should receive an award for legal expenses incurred at the trial level. *See Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407 (Tenn. Ct. App. Sept. 1, 2006) (considering spouse's inability to pay legal expenses and determining that spouse was not required to liquidate limited assets to pay legal costs on appeal). Accordingly, we decline to diverge from the trial court's finding that Wife cannot afford her legal costs and that Husband has sufficient means to pay her attorney's fees. *Riggs*, 250 S.W.3d at 457. Accordingly, on remand, the trial court is directed to determine the amount of reasonable and necessary attorney's fees incurred by Wife as a result of this appeal and to enter a supplemental order requiring Mr. Henson to pay Ms. Henson the reasonable legal expenses she incurred in defense of this appeal.

## V. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court. We remand the case for a determination of Wife's attorney's fees on appeal and for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are taxed to the Appellant, Chris Robert Henson, and his surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE